UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

Eastern District of Kentucky
FILED
JAN 24 2007
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 06-151-GWU

MARY PLANK,                                                      PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,             DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Plank

> Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Plank

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

Plank

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

Plank

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Plank

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The administrative law judge (ALJ) found that Plank had amblyopia in the right eye and an anxiety disorder. (Tr. 16). As a result, he believed that she had non-exertional restrictions including (1) a need for a job which did not require depth perception and/or a field of vision in the right eye, and (2) a need for simple tasks in an object-focused setting involving only casual co-worker or public contact. (Tr. 17). While this would preclude Plank's past work, it would allow an individual with that vocational profile to engage in a significant number of alternative jobs identified by a vocational expert (VE). (Tr. 18-20). Thus, the claims for benefits were denied. (Tr. 20).

On appeal, the plaintiff focuses on the assessment of her mental restrictions and does not specifically reference any inadequacy in the analysis of any physical complaints. At any rate, the VE identified jobs at lower levels of exertion (Tr. 54), even though the ALJ ultimately found there were no non-exertional impairments.

7

Plank

As the plaintiff points out, the only mental health examiner of record was Dr. Syed Raza, who was both a consultative examiner and a treating source.

Statements in the report on Raza's consultative examination supported the administrative decision, despite the plaintiff's arguments to the contrary. The examiner noted that Plank's clothing was neat and tidy, her speech clear, her affect full, her mood euthymic, and her thought processes logical. (Tr. 237-238). He also observed that her judgment was "very good" and that she was alert and oriented. (Tr. 238). The only diagnosis he made was of an anxiety disorder and, as mentioned by the defendant in her brief, the GAF scores assigned were consistent with only mild symptoms. (Tr. 240). Raza opined that she had a good understanding of simple one-two step instructions and was able to sustain concentration and persistence to complete tasks in a normal amount of time (Tr. 240), which obviously was consistent with the hypothetical question given to the vocational expert. Raza also indicated that, due to the plaintiff's nervousness <u>and clumsiness</u>, she might not be able to interact with supervisors (Id.); however, this statement is not only tentative, but also refers to the factor of clumsiness, which is not objectively established to be related to mental health concerns. Although the

8

Plank

doctor described her as having "poor coping skills and response to normal pressures" (Id.), he also stated that this was, to some extent, remediable (Tr. 241).[1]

Several months later, Syed and the staff of the Cumberland River Comprehensive Care Center (CRCCC) began to treat the plaintiff. GAF scores reported were either at the mild (Tr. 289) or moderate (Tr. 274, 275, 288) range. As of mid-June, the staff observed that her mood was euthymic, her affect congruent, her thoughts logical, her eye contact good, and that she was alert and oriented. (Tr. 287). A therapist described her as having no cognitive/intellectual, societal, daily living, or role functioning impairment. (Tr. 283). Another time, her interaction quality was described as friendly and cooperative, and it was observed that she was alert and attentive. (Tr. 278). In early July, despite describing a family situation in which her son was about to be arrested, she was only slightly anxious, and she was again alert and attentive. (Tr. 276). That same date, a moderate symptom GAF was reported, with Axis IV listing several situation stressors such as "low income." (Tr. 274). Later that month, Raza described her as exhibiting good hygiene, good eye contact, a euthymic mood, a full range of affect, logical thoughts, and good insight and judgment. (Tr. 360). This last set of progress notes document treatment only

---

[1] According to the statements in the report, her condition would be helped by psychotherapy; earlier in the report, it was noted that the plaintiff had heretofore not sought such therapy.

9

Plank

into September, 2004, a mere six months after the consultative examination which marked the first contact with Plank.

As no detailed assessment form was ever completed while the plaintiff was at the CRCCC, the most detailed functional capacity statements came in Raza's consultative examination report. Thus, the ALJ could rely on this information--to the extent a definite opinion was expressed, to the extent it was based on mental health considerations, and to the extent it was established to have lasted more than a <u>year</u> (i.e., meeting the durational requirement in the regulations).

The decision is affirmed.

This the _24_ day of January, 2007.

G. WIX UNTHANK
SENIOR JUDGE